O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LAWRENCE DOUGLAS EDISON, | ) | CASE NO. CV 12-00098 R (RZ) |
| Petitioner, | ) ) ) | ORDER SUMMARILY DISMISSING MARSY'S LAW CHALLENGE TO DURATION OF PAROLE DENIAL |
| vs. | ) ) | |
| BOARD OF PAROLE, | ) ) | |
| Respondent. | ) ) | |

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides in part that "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." The Court will dismiss the action summarily because Petitioner's claim, challenging not his confinement *per se* but only an increase in the span of time before he again will receive parole consideration, plainly lacks legal support.

**I.**

**BACKGROUND**

Petitioner Lawrence Douglas Edison is a California state inmate. He was sentenced to an indeterminate sentence for a 1995 California conviction for attempted

murder. On January 13, 2010, the Board of Parole Hearings (BPH or Board) denied Petitioner parole, *see* Ex. A to Pet., but the denial is not challenged here. Petitioner challenges the Board's concurrent decision that Petitioner must wait five years, instead of a shorter span of time, before he will receive renewed parole consideration. A 2008 California law, passed by voters as Proposition 9 and commonly called Marsy's Law, significantly increased the amount of time allowable between a prisoner's denial of parole and the prisoner's next parole hearing. Petitioner's specific argument is that the application of the law to him violates the Ex Post Facto Clause, because Petitioner committed his offense prior to passage of Marsy's Law and because, he asserts, it effectively increases his punishment. All authority known to the Court is to the contrary.

## II.
## COURTS CONSISTENTLY HAVE REJECTED EX POST FACTO CHALLENGES TO POST-CONVICTION INCREASES IN THE DURATION OF TIME BETWEEN PAROLE HEARINGS

**A. Applicable Law**

In December 2011, this Court's Chief Magistrate Judge Stephen J. Hillman explained persuasively, as follows, why this sort of challenge to a Marsy's-Law-based increase in time until a next parole hearing does not succeed:

> Under California's parole hearing statute as it existed prior to the enactment of Marsy's Law, indeterminately-sentenced inmates, such as petitioner, were denied parole for one year unless the BPH found, with stated reasons, that it was unreasonable to expect that parole consideration could be granted the following year, in which case the subsequent hearing could be extended up to five years. CAL. PENAL CODE § 3041.5(b)(2) (2008).
>
> At his November 2, 2010 parole hearing, however, petitioner was subject to the terms of the amended statute. CAL. PENAL CODE § 3041.5(b)(3)

authorizes the denial of a subsequent parole hearing for a period of up to fifteen years. CAL. PENAL CODE § 3041.5(b)(3) (2010). Under the amended statute, the BPH may defer the next parole consideration hearing for a period of three, five or seven years if the BPH, considering parole suitability criteria,FN3 finds that such a period of incarceration is required in light of the public and victim's safety. CAL. PENAL CODE § 3041.5(b)[(3)](C). The BPH may defer the next parole consideration hearing for a period of ten or fifteen years if the BPH, considering parole suitability criteria under a clear and convincing evidence standard, finds that a more lengthy period of incarceration is required in light of the public and victim's safety. CAL. PENAL CODE § 3041.5(b)[(3)](A)-(B). The BPH may hold an earlier parole hearing *sua sponte* or at the prisoner's request "when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner[.]" CAL PENAL CODE §§ 3041.5(b)(4) and (d)(1).

> FN3. The parole suitability criteria were not altered by the amended statute. *See Gilman v. Schwarzenegger,* 638 F.3d 1101, 1104 n.3 (9th Cir. 2011).

The Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. CONST. Art. I, § 10. A statute violates the Ex Post Facto Clause if it: (1) punishes as a crime an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. *Collins v. Youngblood*, 497 U.S. 37, 52, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) . . . . Not every law that disadvantages a defendant is a prohibited ex post facto law. In order to violate the Ex Post

Facto Clause, the law must essentially alter "the definition of criminal conduct" or increase the "punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441–42, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *Souch v. Schaivo*, 289 F.3d 616, 620 (9th Cir. 2002) . . . .

California Penal Code § 3041.5 has been amended several times since petitioner's 1991 conviction to allow for longer periods of time between parole suitability hearings. Ex post facto challenges to those amendments have all been rejected. *See, e.g., California Dep't of Corrections v. Morales*, 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (holding that the 1981 amendment to § 3041.5, which increased maximum deferral period of parole suitability hearings to five years, did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); *Watson v. Estelle*, 886 F.2d 1093, 1097–98 (9th Cir. 1989) (finding no violation of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the 1977 implementation of California's Determinate Sentence Law); *Clifton v. Attorney General Of the State of California*, 997 F.2d 660, 662 n. 1 (9th Cir. 1993) (same); *see also Garner v. Jones*, 529 U.S. 244, 249, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000) (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years).

Earlier this year, the Ninth Circuit overturned a district court decision granting preliminary injunctive relief to plaintiffs in a civil rights class action seeking to prevent the BPH from enforcing the amended deferral periods established by Marsy's Law. *Gilman v. Schwarzenegger*, 638 F.3d 1101 (9th Cir. 2011). The Ninth Circuit found it unlikely that plaintiffs would succeed on the merits of their underlying challenge premised on the Ex Post Facto

Clause. The Ninth Circuit compared and contrasted Marsy's Law with existing Supreme Court precedent:

> Here, as in *Morales* and *Garner*, Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole. However, the changes to the frequency of parole hearings here are more extensive than the change in either *Morales* or *Garner*. First, Proposition 9 increased the maximum deferral period from five years to fifteen years. This change is similar to the change in *Morales* ( i.e., tripled from one year to three years) and the change in *Garner* (i.e., from three years to eight years). Second, Proposition 9 increased the minimum deferral period from one year to three years. Third, Proposition 9 changed the default deferral period from one year to fifteen years. Fourth, Proposition 9 altered the burden to impose a deferral period other than the default period. . . . Neither *Morales* nor *Garner* involved a change to the minimum deferral period, the default deferral period, or the burden to impose a deferral period other than the default period.

*Gilman, supra*, 638 F.3d at 1107–08.

The Ninth Circuit found these distinctions insignificant due to the availability of advance parole hearings at the Board's discretion (*sua sponte* or upon the request of a prisoner, the denial of which is subject to judicial review), reasoning that, "as in *Morales*, an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing." *Id*. at 1109 (quoting *Morales, supra*, 514 U.S. at 513). The Ninth Circuit concluded that plaintiffs had failed to demonstrate a significant risk that their incarceration would be prolonged by application of Marsy's Law, and therefore found that plaintiffs had not established a likelihood of success on the merits of their ex post facto claim. *Id*. at 1110–11.

In addition to these preliminary conclusions by the Ninth Circuit that Marsy's Law does not appear to violate the Ex Post Facto Clause, district courts have dismissed habeas petitioners' ex post facto challenges to Marsy's Law. *See, e.g., Lucero v. Wong*, 2011 WL 5834963, *4 (N.D. Cal.

November 21, 2011) (holding that the petitioner had failed to show that the amended statute created a significant risk of prolonging his incarceration because of the availability of advance hearings); *Johnson v. California Bd. of Parole Hearings*, 2011 WL 5592900, *4 (E.D. Cal. November 16, 2011) (holding that the petitioner had failed to show that "Proposition 9 creates more than just a 'speculative and attenuated possibility of prohibited effect of increasing the measure of punishment for covered crimes.'"); *Saenz v. Ochoa*, 2011 WL 5570228, *3 (C.D. Cal. September 20, 2011) (holding that there was no Ex Post Facto Clause violation because Proposition 9 does not "modify the statutory punishment imposed for petitioner commitment offense," "alter the formula for earning sentence reduction credits or the standards for determining petitioner's initial parole eligibility date or his suitability for parole," or "change the basic structure of California's parole law since the Board still must consider the same factors in determining parole suitability").

In light of the above cases, and in light of the fact that at the November 2, 2010 parole hearing the BPH told petitioner there was a provision in Proposition 9 permitting him to request an earlier parole hearing based on a change of circumstances or new information [citation], the Court is unable to find that petitioner's claim concerning Proposition 9 has merit.

*Stephen v. Swarthout*, No. CV 11–7685–R (SH), 2011 WL 6937375 (C.D. Cal. Dec. 5, 2011) at *4-*7.

**B. Discussion**

Petitioner's setting is not meaningfully distinguishable from that of petitioner Jimmie Stephen in the foregoing discussion by Chief Judge Hillman. (Although it is not clear that the Board expressly *told* Petitioner about the possibility of an earlier-than-

scheduled parole consideration, as the Board told petitioner Stephen, Petitioner nonetheless is well aware of that possibility.  In his supporting Memorandum, he explains that the Board is "able to decrease the denial period, if there is clear and convincing evidence" to show that earlier consideration will not endanger the safety of the public or a victim.  Mem. at 3.)  The action lacks legal support and should be dismissed.

### III.
### CONCLUSION

For the foregoing reasons, the Court DISMISSES the action with prejudice.

DATED: January 13, 2012

---
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE